IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK F.,[1] | : | |
|     *Plaintiff,* | : | CIVIL ACTION |
|   v. | : | No. 24-4241 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
|     *Defendant.* | : | |

<u>MEMORANDUM OPINION</u>

HON. JOSÉ RAÚL ARTEAGA                  October 10, 2025
United States Magistrate Judge[2]

      The Commissioner of Social Security, through an Administrative Law Judge ("ALJ"), determined that Plaintiff Patrick F. was not disabled and denied his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for Supplemental Security Income ("SSI") under the Act's Title XVI, 42 U.S.C. §§ 1381-1383. (Tr. 33, 72-73.) Patrick F. seeks reversal and remand, arguing that the ALJ's decision was not based on substantial evidence because he failed to properly evaluate Dr. Anne M. Greenberg's medical opinion. (*See* ECF 12 at 10-15.) The

---

    [1] Patrick F. is referred to solely by his first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Oct. 10, 2025).

    [2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 6.)

Commissioner responds that the ALJ reasonably evaluated the medical opinion evidence and that Patrick F. provides no basis for disturbing the ALJ's determination. (*See* ECF 13 at 5-15.)

After careful review of the complete record, Patrick F.'s request for review is **DENIED** and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Patrick F. applied for DIB and SSI on June 6, 2022, alleging disability beginning on January 1, 2018. (Tr. 72-74.) His applications were denied initially and on reconsideration. (Tr. 72-73, 82, 91.) Patrick F. requested an in-person hearing, but he and his counsel later agreed to appear via telephone. (Tr. 125-26, 164-65.) The ALJ held a telephone hearing on November 7, 2023, where Patrick F. testified and was represented by counsel. (Tr. 38-57.) The ALJ also heard a vocational expert's ("VE's") testimony. (Tr. 57-63.) At the hearing, Patrick F. amended his alleged onset date to June 6, 2022. (Tr. 43.) The ALJ denied Patrick F.'s application on December 28, 2023, finding that he was not disabled. (Tr. 23-37.)

According to the ALJ, Patrick F. met the insured status requirements of the Social Security Act though December 31, 2023, and had not engaged in substantial gainful activity[3] since his alleged June 6, 2022 disability onset date. (Tr. 25.) At the time of the

---

[3] Substantial gainful activity is defined as work activity that is both substantial and gainful and is generally presumed if an individual has earnings above a level set out in the regulations. *See* 20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975.

alleged onset, he was forty-seven years old: in Social Security terms, he was a younger person. (Tr. 31.) *See* 20 CFR §§ 404.1563(c), 416.963(c).

The ALJ found that Patrick F. had three severe impairments: lumbar, cervical, and thoracic spine disorders. (Tr. 26.) Although Patrick F. also had been diagnosed with anxiety and depression, the ALJ found that the impairments did "not cause more than minimal limitation in" his "ability to perform basic mental work activities," so they were non-severe. (*Id.*) The ALJ also found that Patrick F.'s history of headaches was non-severe because the headache disorder did not meet the twelve-month durational requirement. (*Id.*) Further, Patrick F.'s alcoholism no longer impaired him because he "gave up alcohol a few months prior" to August 2023. (*Id.*) Lastly, the ALJ determined that Patrick F. had no limitations in his "ability to understand, remember, or apply information, interact with others, concentrate, persist or maintain pace and adapt or manage himself." (*Id.*)

The ALJ determined that Patrick F. had the residual functional capacity[4] to perform sedentary work[5] involving, at most, "[f]requent use of hand controls and foot

_____

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

[5] *See* 20 C.F.R. § 404.1567 (setting forth "physical exertion requirements of work in the national economy"). Pertinent here, sedentary work "involves sitting" with occasional walking and standing, "lifting no more than 10 pounds at a time," and "occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 404.1567(a). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c). Heavy

controls," "[f]requent reaching," and occasional performance of "other postural activities." (Tr. 27-28.) Additional limitations included not climbing ropes, ladders, or scaffolds. (Tr. 27.) Further, Patrick F. could only occasionally work in extreme temperatures, humidity, or vibration, and in proximity to unprotected heights or moving mechanical parts. (Tr. 28.) The ALJ's RFC determination was rendered after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence *and other evidence*" as well as "the medical opinion(s) and prior administrative medical finding(s)." (Tr. 28 (emphasis added).)

The ALJ determined that Patrick F. had past relevant work as a pipefitter, which he performed at the medium level though it is generally performed at the heavy level. (Tr. 31.) This work was substantial gainful activity performed within the relevant period and long enough for Patrick F. to achieve average performance. (*Id.*) However, given his impairments, the ALJ found that Patrick F. was unable to perform past relevant work actually or generally. (*Id.*)

Considering Patrick F.'s age, education, work experience, and RFC, as well as the VE's testimony, the ALJ then determined that there were jobs existing in significant numbers in the national economy that he still could perform: information clerk, order clerk, and packaging machine tender. (Tr. 31-32.) As a result, he was not disabled. (Tr. 32-33.)

---

work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *Id.* § 404.1567(d).

After the Appeals Council denied Patrick F.'s request for review (Tr. 7-9), he filed this action seeking review of the Commissioner's final decision (ECF 1.)

## II.    LEGAL STANDARDS

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner considers whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has impairment(s) that meet or medically equal a listed impairment[6]; (4) has the capacity to do past relevant work, considering the claimant's RFC; and (5) is able to do any other work, considering the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a), 416.920(a). The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant *always* bears the burden . . . by a preponderance of the evidence . . . .") (emphasis added). At step five, "the burden of production shifts to the Commissioner, who must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with the claimant's medical impairments, age, education, past work experience, and RFC." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (citation modified).

---

[6] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

The limited question before the Court on review of the Commissioner's final determination is not whether Patrick F. was disabled.  Rather, the Court must determine whether "substantial evidence" supports the Commissioner's finding that he was *not* disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. 42 U.S.C. § 405(g). Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record.[7] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Id.* at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation modified).  It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Id.* at 359. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making [his or her] finding," even where there is record evidence "suggesting

---

[7] Any legal issues the ALJ decides are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

a contrary conclusion"). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak*, 777 F.3d at 611.

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). Courts defer to the ALJ's assessment of the evidence so long as the decision "explain[s] what evidence [the ALJ] found not credible and why." *Zirnsak*, 777 F.3d at 612. Under the applicable regulations for claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.416.920c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). ALJs must "articulate how [they] considered the medical opinions" and "how persuasive" the opinions are. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). ALJs need to "explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said differently, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* "A reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citation modified). "While form is not irrelevant in the scripted analytical steps called for when determining if someone is disabled," an ALJ need not

7

"chant every magic word correctly" to avoid the remand of "an otherwise thorough and well-reasoned opinion." *Hess v. Comm'r Social Security*, 931 F.3d 198, 200 (3d Cir. 2019) (citation modified).

Supportability and consistency are the "most important" persuasiveness factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Under the governing regulations, the ALJ *may*, but is not required to, discuss factors other than supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 n.1 (W.D. Pa. Dec. 4, 2023). An ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical opinion considered in reaching a determination. *Zaborowski*, 115 F.4th at 639. To address whether any doctor's opinion was supportable or consistent, the ALJ need only "weave supportability and consistency throughout [their] analysis of which doctors were persuasive"—no "magic words" are required. *Id.* The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). To decide whether the record was sufficiently developed, the Court reads the ALJ's decision "as a whole." *Id.*

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing" the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Patrick F.

bears the burden to explain how any "error to which he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III.    DISCUSSION

Patrick F. argues that although the ALJ found that he had the RFC to perform sedentary work subject to additional restrictions, appropriate consideration of the medical opinion evidence should have supported a finding that he was, instead, unable to work. (*See* ECF 12 at 15 (arguing that the record supports a finding that he was unable "to engage in regular, full-time employment").) In particular, he argues that in determining he had the RFC to perform sedentary work, the ALJ improperly discounted the opinion of consulting physician Anne M. Greenberg, M.D. (*See id.* at 10-14.) Chiefly, Patrick F. maintains that the ALJ failed to adequately address the supportability and consistency factors. (*See id.* at 12-14.) The Commissioner responds that—reading the decision as a whole—the ALJ reasonably found that Patrick F. could "perform[] a range of sedentary work" because the record does not show that he "could only sit, stand, and walk for a total of six hours in an eight-hour day." (ECF 13 at 5-6, 9-10.) In the Commissioner's view, remand is not required because Patrick F.'s claims were not "entirely consistent with the medical and other evidence of record." (*Id.* at 11-12.) The Commissioner also contends that, in line with the ALJ's decision, Dr. Greenberg's opinion as to Patrick F.'s RFC "was not supported by her own generally unremarkable

examination findings," and that her report was "internally inconsistent" since it noted Patrick F.'s "ability to engage in certain activities." (*Id.* at 12.)

Considering the parties' respective arguments and upon review of the record, the ALJ appropriately considered the medical opinion evidence in determining Patrick F.'s RFC and substantial evidence supports his decision.

### A.    The ALJ Adequately Considered Supportability.

Remand is not required based on the ALJ's consideration of whether Dr. Greenberg provided adequate support for her own opinion. Although Patrick F. argues that the ALJ failed to adequately consider supportability (*see* ECF 12 at 12), the ALJ sufficiently addressed this factor by explaining that Dr. Greenberg did not adequately support her medical opinion by relying on her examination of him. (*See* Tr. 29-30.) *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be."). Substantial evidence exists to support the ALJ's determination that she did not and that, as a result, her opinion was not persuasive.

As the ALJ explained, Dr. Greenberg opined that Patrick F. "could lift [ten] pounds continuously, [twenty] pounds frequently and [fifty] pounds occasionally" and "carry [ten] pounds frequently[, twenty] pounds occasionally and never carry more than [twenty] pounds." (Tr. 30.) Dr. Greenberg also concluded that Patrick F. "could sit for four hours total in an eight-hour workday, stand for one hour and walk for one hour." (*Id.*) She opined that, Patrick F. "could frequently use either hand for reaching, including

overhead reaching[,] . . . operate bilateral foot controls[,] . . . climb ramps and stairs, [and] balance and stoop." (*Id.*) She also opined that he could "occasionally climb ladders or scaffolds, kneel, crouch, or crawl," and "frequently work at unprotected heights, [work] around moving mechanical parts, operate a motor vehicle, [and] work in areas with humidity and wetness, dust, odors, fumes, . . . pulmonary irritants, extreme cold, extreme heat and vibration." (*Id.*)

Dr. Greenberg's assessment of Patrick F.'s ability to do work-related activities did not persuade the ALJ. While the ALJ concluded that Dr. Greenberg had "understated" Patrick F.'s "assessed limitations on lifting and carrying," he also found that Dr. Greenberg's opinion that Patrick F. "could only sit, stand, and walk for a total of six hours in an eight-hour workday" was not supported by her exam of Patrick F. and the "overall records." (*Id.*) The ALJ explained that the record did not show sufficiently deleterious "neurological deficits which would result in such limitations" and noted that Dr. Greenberg's opinion suggested that "these limitations were due to [Patrick F.'s] complaint" of needing to lie supine during the workday due to pain. (*Id.*) The ALJ also explained that "[s]ome of the nonexertional limitations" that Dr. Greenberg had assessed were "not supported by the overall record, including [Patrick F.'s] treatment records." (*Id.* (citing Tr. 399-525).)

Patrick F. contends the ALJ should not have rejected Dr. Greenberg's opinion that he could only work six hours in an eight-hour workday. (ECF 12 at 10.) He argues that the ALJ's reasoning was deficient because it did not "actually assess how Dr. Greenberg's opinion [was] supported by her own examination as well as the objective findings . . . in

the record." (*Id.* at 12.)  However, the ALJ discussed Dr. Greenberg's October 19, 2022

examination of Patrick F. at length.  (*See* Tr. 29.)  Ultimately, the ALJ explained that the

opinion she rendered regarding his ability to do work-related activities after the exam

was not persuasive because the records, including Dr. Greenberg's examination of Patrick

F., did not "show," *i.e.* support, her opinion that Patrick F. "could only sit, stand, and

walk for a total of six hours in an eight-hour workday."  (Tr. 30.)

Dr. Greenberg noted that the basis of her findings for Patrick F.'s exertional

limitations were his subjective complaints of pain.  (Tr. 330-31.)  Despite her opinion that

Patrick F. could only stand and walk a total of six hours out of an eight-hour workday,

she also opined that he could *continuously* lift up to ten pounds, *frequently* lift eleven to

twenty pounds and carry up to ten pounds and *occasionally* lift twenty-one to fifty pounds

and carry eleven to twenty pounds.[8]  (Tr. 330.)  During her exam of Patrick F., he reported

chronic back pain and sporadic neck pain that interfered with daily living and

"worsen[ed] with prolonged or repeated sitting, standing, walking, bending, lifting,

carrying, and twisting."  (Tr. 326.)  He appeared "to be in some distress" and held his

body "upright and stiff" on the examination table.  (Tr. 328.)  Dr. Greenberg, however,

also noted that Patrick F.'s gait and stance were normal, he did not need any help getting

on and off the exam table, and he could rise from a chair without issue.  (*Id.*)  He could

walk on his heels and toes without difficulty and do a full squat.  (*Id.*)

---

[8] The form Dr. Greenberg completed defined "continuously" as six hours a day, "frequently" as two to four hours a day, and "occasionally" as up to two hours a day, five days a week.  (Tr. 330.)

Dr. Greenberg found that Patrick F. had dextroscoliosis, but x-rays of his lumbar spine showed no fracture or subluxation.  (Tr. 328-29.)  Cervical spine x-rays showed only moderate degenerative disc disease at C6-C7.  (Tr. 329.)  Bilateral straight leg raising did not cause him radicular pain.  (Tr. 328.)  Patrick F. also exhibited no neurological or sensory deficits, with his deep tendon reflexes and strength in his extremities being normal.  (Tr. 328.)  He had a slight decrease in range of motion in his shoulder for overhead reaching and abduction, but a full range of motion for shoulder adduction and in his cervical and lumbar spine.  (Tr. 337-38.)

An ALJ determines functional capacity from "all of a claimant's *credibly established limitations*." *Rutherford*, 399 F.3d at 554.  When an alleged limitation is "supported by medical evidence, but is opposed by other evidence in the record," the ALJ may choose to discredit it.  *Zirnsak*, 777 F.3d at 615.  The ALJ's analysis highlighted the inconsistencies between Patrick F.'s reported symptoms and Dr. Greenberg's generally unremarkable examination findings—mild degenerative changes, no neurological deficits, and few objective mobility limitations—and determined that Dr. Greenberg's conclusions about Patrick F.'s RFC were not sufficiently supported.  (*See* Tr. 29-30.)  "There was no need to say more than that" to comply with the regulations.  *See Zaborowski*, 115 F.4th at 639-40.

### B.    The ALJ Adequately Considered Consistency.

Turning to consistency, Patrick F. faults the ALJ for not "engag[ing] in any substantive analysis of the consistency of Dr. Greenberg's opinion."  (ECF 12 at 12-14.)  He also complains about the ALJ's "decision as a whole" for "provid[ing] only a cursory discussion of the medical records."  (ECF 12 at 12-13.)  The question, however, is not

whether there is evidence in the record that supports a different conclusion from the ALJ's, but whether there is "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's determination. *Biestek*, 587 U.S. at 103. The ALJ explained throughout his decision that Patrick F.'s medical records, which also included statements that he had made to providers, were inconsistent with Dr. Greenberg's opinion. (*See* Tr. 29-30.) *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). That was enough under the governing regulations.

Patrick F. contends that the ALJ "ignored objective findings" in his 2023 physical therapy records, which showed his consistent reduced range of motion, poor posture, and muscle tension. (*Id.* at 13-14 (citing Tr. 351, 363, 369, 372, 378, 425-26, 432, 450, 498-99).) He also argues that the ALJ erroneously found that he attended twelve physical therapy sessions instead of twenty-four. (*Id.* at 13.) However, the ALJ never concluded that Patrick F. attended twelve sessions in total—he merely noted that Patrick F. "attended [twelve] physical therapy sessions without any improvement" in April and May 2023. (Tr. 29.) The ALJ also cited records from August to September 2023 showing that Patrick F. completed twelve more physical therapy sessions. (Tr. 30, 37 (citing Tr. 347-98).) The ALJ was not required to highlight these records, as they all showed that Patrick F. reported improvement in his ability to sleep and perform daily tasks but continued experiencing pain and exertional and mobility limitations. (*See, e.g.*, Tr. 383-85, 426-29 ("[Patrick F.] presents with minimal functional return . . . .").) The ALJ did not

have to explicitly "mention every piece of evidence in the record" to make his determination.  *See Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009); *see also Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 162 (3d Cir. 2016) ("[C]herry-picking of unmentioned details from a voluminous record does not a viable claim make.").

Patrick F. argues that the ALJ should have credited Dr. Greenberg's opinion as being consistent with physical therapy records showing that he had chronic poor posture and reduced range of motion.  (*See* ECF 12 at 12-14; *see also* Tr. 348 (noting forward head, rounded shoulders, and decreased lumbar and cervical spine mobility), 372 (detailing soft tissue restrictions throughout left upper back and neck).)  However, Dr. Greenberg made no such findings.  Again, upon examination, she observed that Patrick F. held his body "upright and stiff" while sitting and had slightly reduced range of motion for shoulder abduction and overhead reaching.  (Tr. 328, 337.)  Otherwise, she found his range of motion for shoulder adduction and in his cervical and lumbar spine normal.  (Tr. 337-38.)  She also noted his stance and gait were normal and that he could rise from a chair, get on and off the exam table, and squat independently without difficulty.  (Tr. 328.)  The ALJ was entitled to discredit Dr. Greenberg's opinion because of these and other inconsistences. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (holding that when "[m]edical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them"); *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (observing that an ALJ has an obligation to weigh medical evidence and choose between conflicting accounts).

Patrick F. also faults the ALJ's decision for relying on his lack of neurological deficits. He argues that their absence "does not negate [his] skeletal problems and limitations with standing, walking, and sitting," as his "back issues are not neurological in nature." (ECF 12 at 11-12 (citing Tr. 399, 402, 413).) The Commissioner responds that the ALJ's "discussion of negative neurological findings . . . was warranted in the context of evaluating Dr. Greenberg's opinion" because Patrick F. "alleged experiencing neurological symptoms" and more severe deficits would be expected in someone alleging such severe motor limitations. (*Id.* at 11, 13.) Indeed, Patrick F. put his neurological symptoms at issue when discussing his back pain. At the November 7, 2023 hearing, he testified about his chronic migraines, a cervical "nerve problem," and treatment of these conditions by neurologists. (Tr. 45-47.) Treatment records from a neurology group show that a clinician diagnosed him with a chronic, unspecified headache and meralgia paraesthetica in the front of his left thigh (*i.e.* tingling), along with non-neurological symptoms. (Tr. 559-64.) Patrick F.'s meralgia paraesthetica diagnosis was based on his own report of numbness and tingling. (Tr. 559.) He also had reported radicular sensations above his left knee in May 2023. (Tr. 424.) Given Patrick F.'s self-report of neurological symptoms stemming from his back issues, it was proper for the ALJ to consider his neurological deficits or lack thereof. *See, e.g.*, *Wannamaker v. Comm'r of Soc. Sec.*, 226 F. App'x 164, 166-68 (3d Cir. 2007) (affirming denial of social security benefits based on consideration of medical evidence including presence or lack of neurological symptoms); *Emenhizer v. Colvin*, No. 16-326, 2017 WL 714046, at *3-4, *9 (M.D. Pa. Feb. 23,

2017) (same); *Laver v. Comm'r of Soc. Sec.*, No. 19-8072, 2020 WL 7640536, at *4 (D.N.J. Dec. 22, 2020) (same).

In finding that Patrick F. was not disabled, the ALJ properly weighed his lack of neurological deficits in the context of its consistency with Dr. Greenberg's opinion and other medical evidence.  (*See* Tr. 29-30.)  Dr. Greenberg opined that Patrick F. did not have neurological deficits or radicular pain with straight leg raising but found he had dextroscoliosis and moderate degenerative disc disease at C6-C7.  (Tr. 328-29.)  A September 21, 2023 x-ray revealed that Patrick F. had "[m]ild degenerative changes" in the lower cervical spine with "mild discogenic disease and reactive spondylotic spurring" at C5-C6 and C6-C7.  (Tr. 571.)  The reviewing radiologist noted some dextral joint arthrosis at C6-C7 but found no compression deformities, no prevertebral soft tissue swelling, and normal alignment.  (*Id.*)  Additionally, an August 30, 2023 MRI of Patrick F.'s cervical and lumbar spine showed multilevel degenerative disc disease/osteoarthritis, scoliosis, and mild to severe foraminal narrowing at C2-C3 and C6-T1.  (Tr. 401.)  Clinicians recommended a conservative treatment plan of oral muscle relaxants and pain medication as well as steroid injections in response. (Tr. 413-15.)  Contrary to Patrick F.'s claims, the ALJ did not consider the lack of neurological deficits to be singularly dispositive.  (ECF 12 at 11-12.)

Substantial evidence supports the ALJ's finding that Dr. Greenberg's opinion as to Patrick F.'s RFC was unsupported and inconsistent with the record as a whole.  *See Laver*, 2020 WL 7640536, at *4 (affirming ALJ's finding that claimant *could perform sedentary work* where he "had only . . . mild degenerative changes, normal ambulation, no evidence of

17

any neurologic deficit, and mild lumbar and cervical radiculopathy" that "could be remediated with conservative treatment").

### C.    The ALJ Adequately Considered Patrick F.'s Complaints of Pain.

Finally, Patrick F. argues that the ALJ "failed to acknowledge [his] consistent complaints of pain."  (ECF 12 at 13 (citing Tr. 347, 353, 362, 368, 371, 380, 425, 430, 446, 454, 460, 473, 476, 482-83, 498).) Relevant here, the ALJ found that Dr. Greenberg's unpersuasive conclusion as to Patrick F.'s RFC appeared to rely upon Patrick F.'s complaint that he needed to lie supine for two hours out of an eight-hour workday to remediate his pain.  (Tr. 30 (citing Tr. 331).)  A review of the record demonstrates that the ALJ appropriately weighed Patrick F.'s subjective complaints of pain in the context of all the evidence.

A claimant's allegation of a symptom alone is not enough to establish an impairment or disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, an ALJ may discount a claimant's subjective statements when they are unsupported by the evidence. *See id.* §§ 404.1529(c)(4), 416.929(c)(4) ("Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms . . . *can reasonably be accepted as consistent* with the objective medical evidence and other evidence.") (emphasis added). While a claimant's testimony about subjective complaints is relevant, an ALJ is not required to simply accept what the claimant said without question.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) ("Although any statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to

18

credit them.") (citation modified) (citing 20 C.F.R. § 404.1529(a)); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) (stating that an ALJ may reject a claimant's subjective complaints so long as the ALJ provides an explanation).  Where an ALJ hears a claimant's testimony, as here (Tr. 41-42), the Court must give deference to the ALJ's credibility determinations.  *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

Here, the ALJ thoroughly discussed Patrick F.'s "statements concerning the intensity, persistence and limiting effects" of his symptoms and found them "not entirely consistent" with the overall record.  (Tr. 28-30.)  The ALJ proffered numerous reasons for discounting Patrick F.'s complaints of pain, including treatment records showing only mild degenerative changes with a lack of neurological deficits.  (Tr. 30.)  *See Burnett*, 220 F.3d at 122 ("[A]llegations of pain and other subjective symptoms must be consistent with objective medical evidence . . . .").  Though he claimed to sleep four to six hours per night and use an inversion table four to six times a day (Tr. 50, 53), several records showed little to no impairment of his sleep (Tr. 326-27, 453, 501) and less frequent use of the inversion table.  (Tr. 473.)  Many records also belied Patrick F.'s reported ability to (1) stand (*contrast* Tr. 50 (testifying that he could only stand for about twenty minutes at a time), *with* Tr. 453 ("I cannot stand for longer than [one] hour without increasing pain."), *and* Tr. 331 (noting that he could stand for forty minutes at a time), *and* Tr. 384-85 (logging that he had achieved his goal of standing thirty to forty-five minutes at a time); (2) stoop (*contrast* Tr. 51 (testifying that he "can't really" bend down to the floor or stoop), *with* Tr. 384-85 (noting that he had improved his "lumbar flexion to [within normal levels] to assist with

forward bending tasks"), *and* Tr. 333 (logging that he could frequently stoop)); and (3) sit. (*Contrast* Tr. 48 (testifying that he "generally" can sit for less than twenty minutes at a time), *with* Tr. 452 ("I can sit only in my favorite chair as long as I like."), *and* Tr. 331 (noting he could sit for two hours at a time).)  Patrick F. also testified inconsistently about (1) his use of the inversion table (*contrast* Tr. 50 (testifying that he needs to use it after twenty minutes of chores up to six times each day), *with* Tr. 56 (claiming that he uses it once at the end of the day if he has performed physical activity)); (2) his ability to do chores and life activities (*contrast* Tr. 49-50 (testifying that he can "generally finish" tasks like cooking but can only engage with them twenty minutes at a time), *with* Tr. 55-56 (stating that he needs no assistance in personal care and can cook, do laundry, and repair fixtures without treatment until the end of the day)); and (3) how long and often he needed to lie down. (*Contrast* Tr. 48-49 (testifying that he alternates among twenty minutes of sitting, twenty to thirty minutes of walking, and lying down "for a while throughout the day"), *with* Tr. 56 (claiming he lies down "a couple hours a day" to read a book and then again at the end of the day); *see also* Tr. 559 (neurology clinician logging that Patrick F. was "[n]ot the best historian").)

The ALJ also accounted for statements from Patrick F.'s medical providers indicating that he seemed primarily motivated to obtain disability benefits.  (*See* Tr. 413, 421 ("[We] discussed that [the] focus of this process should be . . . improvement of symptoms[,] not the goal of disability."), 430.)  *See Pachilis v. Barnhart*, 268 F. Supp. 2d 473, 483 (E.D. Pa. 2003) (noting that a claimant's "disincentive to work [was] a permissible criterion bearing on his credibility"); *see also Cunningham v. Richardson*, 360 F. Supp. 1037,

1042 (E.D. Pa. 1973) ("The subjective testimony of the claimant must . . . be evaluated with due consideration for motivation . . . ."). Indeed, Patrick F. did not see an orthopedist despite being referred to one[9] (Tr. 47, 413, 416), and clinicians noted that he appeared "resistant to the idea of injections" and "[un]motivated to treat his pain." (Tr. 421.) *See Schemelia*, 261 F. Supp. 3d at 543 (finding noncompliance with treatment a valid consideration in determining claimant's credibility on pain and severity of symptoms); *Smith v. Astrue*, 961 F. Supp. 2d 620, 652 & n.17 (D. Del. 2013) (same). The ALJ was permitted to consider whether the frequency and/or extent of treatment sought is not comparable with the degree of Patrick F.'s subjective complaints. *See* SSR 16-3P, 2017 WL 5180304, *9 (Oct. 25, 2017).

As the ALJ sufficiently explained why he rejected Patrick F.'s claim of needing to lie supine for two hours each eight-hour workday, the Court defers to that credibility determination. (*See* Tr. 30, 331.) *See Burnett*, 220 F.3d at 122.

## IV.    CONCLUSION

Upon review of the record, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's conclusion that Dr. Greenberg's opinion was not persuasive. *Biestek*, 587 U.S. at 103. Substantial evidence is a "low threshold." *Zaborowski*, 115 F.4th at 640. Because Patrick F. has not shown that

---

[9] Patrick F. does not argue that his insurance would not cover an appointment with an orthopedist or that he could not afford going to one. *See Schemelia v. Comm'r of Soc. Sec.*, 261 F. Supp. 3d 533, 543 (D.N.J. 2017) ("[A]n ALJ cannot deny a claimant benefits based on the claimant's failure to obtain treatment [he or] she cannot afford."); 20 C.F.R. § 404.1530(b).

any of his complaints about the ALJ's consideration of Dr. Greenberg's opinion or the other record evidence would have changed the outcome of his case under the governing regulations, remand is not required to further consider it. *Rutherford*, 399 F.3d at 553. Therefore, Patrick F.'s request for reversal and remand is **DENIED**. The Commissioner's final decision is **AFFIRMED**, and this matter is **DISMISSED**.

An appropriate Order follows.